**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MICHAEL KING, etc., et al.,**

    **Plaintiffs,**

v.                                                          Case No.  8:10-cv-977-T-30AEP

**GOVERNMENT EMPLOYEES**
**INSURANCE COMPANY,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon GEICO General Insurance Company's Motion for Summary Judgment and Incorporated Memorandum of Law (Dkt. 66), Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 73), Plaintiffs' Dispositive Motion for Partial Summary Judgment as to Defendant's Third, Fourth and Sixth Affirmative Defenses and Incorporated Memorandum of Law (Dkt. 67), and GEICO's Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment (Dkt. 72).  The Court, having reviewed the motions, responses, record, and being advised of the premises, concludes that genuine issues of material fact preclude summary judgment on the bad faith claim.  Therefore, GEICO's Motion for Summary Judgment must be denied, with the exception that the Court will grant GEICO's motion for partial summary judgment on the underlying verdict as an element of damages.  Additionally, the Court will grant summary judgment in the Kings' favor on Defendant's Third, Fourth, and Sixth Affirmative Defenses.

## BACKGROUND

This is a first-party bad faith action, brought pursuant to § 624.155, Florida Statutes, by Plaintiffs Michael King and Phyllis King against Defendant GEICO. This bad faith action arises out of an automobile accident that occurred on August 11, 2004, in Hillsborough County, Florida. GEICO had issued an insurance policy to Donna Buttermore, who was the passenger and owner of the vehicle driven by Michael King. The policy, in effect at the time of the accident, afforded Uninsured/Underinsured Motorist ("UM") benefits in the amount of $25,000 per person. Michael King was a Class II insured under the policy and eligible to receive $25,000 in UM benefits.

The underlying action to determine liability was brought in the Thirteenth Judicial Circuit Court in and for Hillsborough County, Florida. In July 2009, the jury returned a verdict in favor of Michael King in the amount of $1,638,171.00, and the state court entered judgment for the full amount of the $25,000 UM policy. On appeal, the Second District Court of Appeal did not review the verdict in excess of the policy limits because it was not included in the final judgment. The Kings then moved to amend the complaint to assert a bad faith claim against GEICO, and the state court granted that motion on April 8, 2010. GEICO filed its Notice of Removal in this Court on April 23, 2010.

King was involved in a three-car accident during the early hours of August 11, 2004. Both other drivers, Holly Hahto and Kristen Livingston, were cited by the Florida Highway Patrol for careless driving. Hahto was insured by Liberty Mutual with a policy that provided up to $100,000 in bodily injury liability coverage, and Livingston was insured by USAA with

the same coverage. Both tortfeasors claimed the other caused the accident, so liability remained disputed.

Immediately following the accident, King reported to GEICO that he suffered "soreness" in his right knee, neck, left wrist, left elbow, and lower back. Later that day, King presented to Urgent Care with the same complaints and received a diagnosis of lumbar strain, contusion to right knee and left elbow, and wrist strain. He was instructed not to return to work for three days.

Over the next eighteen months, King presented to multiple physicians. Dr. Rog, King's primary physician referred him to Dr. Fiore, an orthopedic specialist, who recommended physical therapy and chiropractic care after reviewing a whole body bone scan and MRI which indicated degeneration in the lumbar spine. King then treated with Dr. Valdes, a chiropractor, and Dr. Garner, a neurologist. Dr. Garner identified a herniated nucleus polposus at L4-5 that made him a surgical candidate, as well as ascribing him with a 25% permanent impairment rating. She referred him to the Laser Spine Institute where he was recommended for a nerve root decompression surgery. King returned to Dr. Fiore who disagreed with immediate surgical intervention, rather suggesting that conservative care first be exhausted, although recognizing the probable necessity of surgery in the future. Finally, Dr. Turner, another orthopedic surgeon, recommended a lumbar percutaneous discectomy.

On April 13, 2006, Mr. Joseph Bryant, the Kings current co-counsel, sent offers of settlement to the three insurers: Liberty Mutual for $100,000, USAA for $50,000, and GEICO for the $25,000 UM benefits. In the settlement offer, Mr. Bryant detailed King's

ongoing treatment and his current medical bills totaling $19,515.15. Adjuster Walter Dunn was assigned the handling of King's UM claim and, after conferring with GEICO's Litigation Manager Gary Gertz, denied King's UM claim on May 8, 2006. GEICO did not conduct any additional investigation into the extent of King's injuries or future treatment; rather, both men agreed that the value of the claim was within a single tortfeasor's limits of $100,000.[1]

On June 9, 2006, King filed a Civil Remedy Notice ("CRN") with the Department of Insurance ("Department"). The CRN included the allegation that "[GEICO] has not attempted in good faith to settle this claim when, under all circumstances, it could have and should have done so, had it acted fairly and honestly toward its insured and with due regard[] for their [sic] interests." Also on June 9, 2006, the Kings filed suit against Hahto and GEICO for the underlying liability action. On June 22, 2006, again after failing to conduct further investigation or reconsidering prior evaluations of King's claim, GEICO denied King's demand for UM benefits under the CRN.

In July 2007, GEICO received King's medical records evidencing he had undergone a much more serious surgery from a new physician than had been previously disclosed to GEICO a year earlier in the settlement offer. On September 7, 2007, GEICO tendered the full $25,000 UM policy amount; however, King refused to accept it. In March 2008, the Kings settled with the other two tortfeasors, and, in July 2009, the underlying action was

---

[1] GEICO had already allocated 100% of the liability against Liberty Mutual, the same conclusion the jury reached in the underlying liability action.

tried before a jury that found King had suffered $1,638,171.00 in damages as a result of the August 11, 2004 accident.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex,* 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## LEGAL DISCUSSION

**1.     GEICO's Motion for Summary Judgment on the Bad Faith Action**

Florida law recognizes bad faith actions against an insurer arising out of the handling of claims, including a UM claim. Fla. Stat. § 624.155 (2005). Unlike third-party bad faith actions that were recognized as early as 1938, there has never been a common law cause of action in Florida for first-party bad faith actions. *State Farm Mut. Auto. Ins. Co. v. LaForet*, 658 So. 2d 55, 58-59 (Fla. 1995). Thus, in 1982, the Florida Legislature enacted § 624.155, which authorizes an insured to sue its insurer for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." Fla. Stat. § 624.155(1)(b).

The "good faith" standard obligates an insurer to use the same degree of care and diligence to settle a claim as would a reasonably prudent person faced with the prospect of paying the total recovery. *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980). This includes the duty to investigate the facts, give fair consideration to reasonable settlement offers, and, if possible, settle. *Id.* Courts apply a totality-of-the-circumstances standard to this analysis when evaluating bad faith actions. *Kearney v. Auto-Owners Ins. Co.*, 664 F. Supp. 2d 1234, 1242 (M.D. Fla. 2009).

Because it is a totality-of-the-circumstances test, the jury may consider any negligence by the insurer in evaluating the bad faith action; however, negligence alone does not amount to "bad faith" as defined by Florida law. *Travelers Indem. Co. of Ill. v. Royal Oak Enter., Inc.*, 429 F. Supp. 2d 1265, 1271 & n.21 (M.D. Fla. 2004). Rather, "[b]ad faith may be inferred from a delay in settlement negotiations which is willful and without reasonable cause. Where liability is clear, and injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations." *Kearney*, 664 F. Supp. 2d at 1242 (quoting *Powell v. Prudential Prop. & Cas. Ins. Co.*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991)). Even more importantly, an insurer's ultimate tender of the policy limits does not necessarily insulate it from liability by an insured's claim of bad faith. *Powell*, 584 So. 2d at 15.

Furthermore, the jury must evaluate whether the insurer acted in good faith by pursuing legal arguments that a court later rejected. *Kearney*, 644 F. Supp. 2d at 1242-43. "While the law does not penalize an insurer for raising a legal issue unsuccessfully, it does

not automatically credit an insurance company with acting in good faith because it raised a non-frivolous legal issue." *Id.* at 1244-45. This consideration does not include deciding on the merits of the legal issues raised, rather just whether the insurer acted fairly and honestly toward its insured and with due regard for her or his interests by insisting on legal defenses instead of settling. *Id.*

Although raising legal defenses and seeking a judicial resolution of disputes does not automatically obviate a bad faith claim, the insurer is not liable when all the conditions under a policy have not yet made payment ripe. *316, Inc. v. Maryland Cas.* Co., 625 F. Supp. 2d 1187, 1191 (N.D. Fla. 2008). A "mere inability to agree to a dollar amount does not prove bad faith" as long as the insurer exercised good faith while adjusting the claim. *Id.* at 1196.

Given the fact-dependent nature of the above considerations, bad faith actions are usually questions left to the discretion of the finder of fact. *See, e.g., Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla. 2004) ("Each case is determined on its own facts and ordinarily 'the question of failure to act in good faith with due regard for the interests of the insured is for the jury.'" (quoting *Gutierrez*, 386 So. 2d at 785)); *Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000) ("Good-faith or bad-faith decisions depend upon various attendant circumstances and usually are issues of fact to be determined by a fact-finder."). This is not one of the rare bad faith cases where summary judgment is appropriate because genuine issues of material fact remain.

Here, the record, accepted in a light most favorable to the Kings, reflects that GEICO failed to conduct any additional investigation into the extent of Mr. King's injuries, either

after receiving the April 13, 2006 settlement offer or after receiving the CRN on June 22, 2006. Although having the right to do so during the sixty-day window following the filing of the CRN, GEICO never attempted to obtain a statement under oath from King, to receive medical authorization allowing access to King's medical providers and treating physicians, or to conduct a compulsory medical examination of King to ascertain the severity of his damages. Nor did GEICO seek review of King's medical records by a physician or an opinion from an outside attorney as to the value of King's claim. In sum, GEICO made no efforts to investigate the claim beyond review of the demand package, either at the time of the initial settlement offer or upon receipt of the CRN.

GEICO argues that it is entitled to summary judgment because it was reasonable for it to evaluate King's claim as within one of the other tortfeasor's policy limits. They assert that there was no bad faith on their part because at the time of the initial settlement offer and the CRN, King had received conflicting recommendations about whether surgery should be sought and had only been advised to undergo minimally invasive procedures. Therefore, they argue it was reasonable for them to deny King's demand because Liberty Mutual's $100,000 policy presumptively could cover such expenses. And when King finally disclosed his subsequent surgery in July 2007, GEICO tendered payment of the $25,000 UM benefits, which King rejected. GEICO presents a strong argument that it acted in good faith by initially refusing the UM benefits given the information it had during April and June of 2006. However, because a reasonable jury could find that, under the totality of the circumstances,

GEICO's failure to further investigate King's claim at the time it received the CRN amounted to bad faith, GEICO's motion for summary judgment must be denied.

**2.    GEICO's Motion for Partial Summary Judgment on the Underlying Verdict as an Element of Damages**

In order to successfully plead a first-party bad faith action based on § 624.155, Florida Statutes, an insured must file a written CRN, obtain a favorable resolution of the underlying liability action against the insurer, and allege that there has been a final determination of both liability on the part of the insurer and the extent of the plaintiff's damages. *Porcelli v. OneBeacon Ins. Co., Inc.*, 635 F. Supp. 2d 1312, 1316 (M.D. Fla. 2008). The existence of liability and the extent of damages are elements of the statutory cause of action, and, if not alleged in the complaint, the case should be dismissed without prejudice or abated until plaintiff can allege both elements, usually after the conclusion of the underlying action. *State Farm Auto. Ins. Co. v. O'Hearn*, 975 So. 2d 633, 635 (Fla. 2d DCA 2008).

In a bad faith action brought against an insurer based on an UM motorist claim, § 627.727(10), Florida Statutes, provides for the following relief:

> The damages recoverable from an uninsured motorist carrier in an action brought under s. 624.155 shall include the total amount of the claimant's damages, including the amount in excess of the policy limits, any interest on unpaid benefits, reasonable attorney's fees and costs, and any damages caused by a violation of the law of this state. The total amount of the claimant's damages is recoverable whether caused by an insurer or by a third-party tortfeasor.

Unfortunately, neither the statute nor case law interpreting the statute elaborates on *how* the finder of fact is to determine the "total amount" of the claimant's damages for first-party

claims in the subsequent bad faith action. *GEICO General Ins. Co. v. Bottini*, – So. 3d –, No. 2D11-1943, 2012 WL 2946533, at *2 (Fla. 2d DCA July 20, 2012) (Altenbernd, J., concurring).[2]

This problem of how to calculate an insured's damages appears unique to first-party bad faith claims arising from UM claims because only the policy limits are entered in a judgment against the insurers. *See Nationwide Mut. Fire Ins. Co. v. Voigt*, 971 So. 2d 239, 241-42 (Fla. 2d DCA 2008) (holding that final judgment against an insurer in a first-party action for contract liability for UM benefits should be limited to the policy limits). Because only the policy limits are entered as the final judgment, the jury's verdict in excess of those limits cannot be reviewed on appeal for errors. *See, e.g., Bottini*, 2012 WL 2946533, at *2 (Altenbernd, J., concurring) (finding that the court does not have the power to issue an opinion affirming the judgment but reversing the verdict as to elements of damages that were not included in the judgment); *Gov't Emps. Ins. Co. v. King*, 68 So. 3d 267, 269 (Fla. 2d DCA 2011) (explaining that "the judgment on appeal was not a judgment for the full amount of the jury's verdict but rather a judgment based on the $25,000 in insurance coverage" and it was "determined that there was no reversible error in that *judgment*." (emphasis added)).

---

[2] In a standard "bad faith" case involving a liability insurance company, the verdict in excess of the insurance limits results in a judgment against the defendant, but not against his or her liability insurance company. Only in a lawsuit against the plaintiff's own insurer, a "first-party" insurance claim, does the excess verdict result in no judgment of any sort. Thus, the problem presented by this case appears unique to bad faith claims arising from coverage under section 627.727.

*Bottini*, 2012 WL 2946533, at *2 n.1.

Appellate review affords procedural due process to litigants. Thus, insurers are left without due process if the verdicts returned in the underlying liability actions are held to be final determinations of the damages owed the insureds in subsequent bad faith actions.

Furthermore, *res judicata* and collateral estoppel principles do not clarify this problem because they are inapplicable to determining the subsequent bad faith damages amount. The Florida Supreme Court has clearly indicated that bad faith claims are separate and independent causes of action from claims arising from contractual obligations. *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991). Thus, *res judicata* does not bind the parties to the verdict amount because it is a separate cause of action. Collateral estoppel also does not bind the parties to the verdict amount because the verdict was not a final judgment accorded conclusive effect.

Yet, as conditions precedent to bringing the bad faith action, insureds must allege in their complaints that there has been a final determination of both liability and the extent of damages. Insureds will undoubtedly allege that the unreviewed jury verdict in excess of the policy limits that was not included in the underlying judgment against the insurers is the appropriate damages amount. Presumably, that is what § 627.727(10) is referencing. However, this Court will not resolve the conundrum that Florida law has created. Rather, to accord due process to insurers, insureds must prove their damages in the bad faith action and are not entitled to rely on the underlying verdict as conclusive proof of those damages.

In the instant case, the Kings' demand judgment against GEICO for the "amount of the [$1,638,171.00] verdict . . . from the underlying action" (Dkt. 42). GEICO argues that

it is entitled to partial summary judgment on the issue of whether the Kings are entitled to the full amount of the underlying verdict as an element of damages in this bad faith action. The underlying state court action focused solely on whether the Kings were entitled to the $25,000 UM benefits under the insurance policy, not the extent of the Kings' damages to be awarded in this bad faith action. The jury found the Kings were entitled to the UM benefits, and the state court entered judgment in that amount: $25,000. Because the verdict in excess of the policy limits was never reviewed on appeal, GEICO is not bound by that amount in this subsequent bad faith action. Therefore, GEICO is entitled to partial summary judgment on this issue, and the $1,638,171.00 verdict is not an element of damages that conclusively determines the amount of damages in this instant case.

3. **Plaintiff's Motion for Partial Summary Judgment as to Defendant's Third, Fourth, and Sixth Affirmative Defenses**

   a. **GEICO's Third Affirmative Defense**

As a condition precedent to bringing a bad faith action, an insured must file a written CRN of the violation with the Department and the insurer, providing the insurer sixty days to cure the violation. Fla. Stat. § 624.155(3)(a) & (d). The CRN form is provided by the Department and should state with specificity the following information:

> 1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.
> 2. The facts and circumstances giving rise to the violation.
> 3. The name of any individual involved in the violation.
> 4. Reference to specific policy language that is relevant to the violation, if any. If the person bringing the civil action is a third party claimant, she or he shall not be required to reference the specific policy language if the authorized

> insurer has not provided a copy of the policy to the third party claimant pursuant to written request.
> 5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

Fla. Stat. § 624.155(3)(b). Furthermore, within twenty days of receipt, the Department can return any notice that fails to provide sufficient information required by the statute. Fla. Stat. § 624.155(3)(c). The Department's "acceptance of a CRN serves as evidence that the CRN has sufficient specificity to provide the insurer with notice of the violation and start the 60-day clock." *See, e.g., Porcelli v. OneBeacon Ins. Co.,* Inc., 635 F. Supp. 2d 1312, 1318 (M.D. Fla. 2008); *Canales v. Am. Sec. Ins. Co.*, No. 8:11-cv-789-T-33AEP (M.D. Fla. Nov. 7, 2011).

Florida's statute does not require an insured on the CRN to allege a specific amount owed to cure the violation by the insurer. *See, e.g., Bullard Bldg. Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of* Am., No. 8:08-cv-50-T-30MAP, 2009 WL 2423436, at *10 (M.D. Fla. Aug. 4, 2009); *Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.*, No. 08-60254-CIV, 2008 WL 3889577, at *3 (S. D. Fla. August 20, 2008). Neither must all the allegations of the complaint be incorporated into the CRN. *Tropical Paradise Resorts, LLC*, 2008 WL 3889577, at *4. Rather, the CRN is designed to prevent insurers from playing a "guessing game" as to what, and how, to cure within the sixty-day window. *Heritage Corp. of South Florida v. Nat. Union Fire Ins. Co. of Pittsburgh*, 580 F. Supp. 2d 1294, 1300 (S. D. Fla. 2008). It is intended to provide a "last opportunity for insurers to comply with their claim-handling obligations when a good-faith decision by the insurer would indicate that

contractual benefits are owed." *Talat Ents., Inc. v. Aetna Cas. and Sur. Co.*, 753 So. 2d 1278, 1284 (Fla. 2000).

The CRN in the instant case identifies the statutory provision allegedly violated, states the purpose is to perfect the rights of the harmed persons, references the policy language relevant to the violation, checks the box "Unsatisfactory Settlement Offer" as the reason for notice, and, as the description of the facts and circumstances, states: "[GEICO] has not attempted in good faith to settle this claim when, under all the circumstances, it could have and should have done so, had it acted fairly and honestly toward its insured and with due regard[] for their [sic] interests." (Dkt. 76-1). GEICO argues that it is entitled to summary judgment because the CRN fails to sufficiently describe the facts and circumstances giving rise to the violation or how it could cure those violations because the Kings merely reiterated the statute. Although the Kings' statement of the facts is conclusory at best, GEICO's argument is "disingenuous." *Altheim v. Geico Gen. Ins. Co.*, No. 8:10-cv-156-T-24, slip op. at 6 (M.D. Fla. Jan. 1, 2011) (describing an analogous argument raised by the same defendant in a similar situation).

The CRN provides GEICO with notice of the alleged violation: failure to settle the claim for UM coverage in good faith. Given the settlement letter detailing King's medical expenses and prognosis received by GEICO just two months prior to receiving the CRN, common sense dictates how GEICO might have responded given the information provided. It is a jury question whether failure to settle for the $25,000 UM benefits constituted bad faith. *See Porcelli*, 635 F. Supp. 2d at 1318 (holding the CRN legally sufficient because an

attached exhibit to the CRN included details regarding the insurance claims, thus providing enough factual specificity to comply with the statutory requirements). GEICO admits that it never made any settlement offer during the sixty-day cure period. Instead, it rejected the CRN demand on the day it received the notice based on its prior assessment of the claim. This is not a case where the insurer is left to play the "guessing game" as to what cure the insured is seeking.

Additionally, the Court notes there is no evidence that the Department returned the CRN for lack of specificity. Accordingly, the Court grants the Kings' motion for summary judgment on GEICO's Third Affirmative Defense.

### b. GEICO's Fourth Affirmative Defense

"[A]n action for bad faith is extra contractual in nature and relates to the duties of an insurer as defined by statute, not the express terms of the contract." *Townhouses of Highland Beach Condo. Ass'n v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1310 (S.D. Fla. 2007). This duty exists outside any contractual duties owed under the insurance policy, and it gives rise to an independent cause of action. *Blanchard*, 575 So. 2d at 1291 (Fla. 1991).

In Defendant's Answer and Affirmative Defenses to Third Amended Complaint (Dkt. 29), GEICO asserts as its Fourth Affirmative Defense:

> . . . any duty owed by it to Plaintiff is governed by the terms and conditions of the subject policy issued by GEICO. To the extent that no duty arises under the policy for all or part of Plaintiffs' claims, the Third Amended Complaint fails to state a cause of action upon which relief can be granted, and GEICO is therefore not liable.

As discussed above, the Kings sufficiently alleged a cause of action against GEICO pursuant to § 624.155, and GEICO identifies no duty under the insurance policy that is relevant to this statutory cause of action. Thus, the Kings are entitled to partial summary judgment on GEICO's Fourth Affirmative Defense.

### c. **GEICO's Sixth Affirmative Defense**

GEICO's Sixth Affirmative Defense is premised on the Kings' failure to comply with the conditions precedent to bringing a bad faith action, thus claiming the Kings failed to state a cause of action upon which relief can be granted. To bring a bad faith action, an insured must file a written CRN, obtain a favorable resolution of the underlying liability action, and allege that there has been a final determination of both liability on the part of the insurer and the extent of the plaintiff's damages. *Porcelli*, 635 F. Supp. 2d at 1316. The Kings have done all three. Thus, they are entitled to summary judgment on GEICO's Sixth Affirmative Defense.

## **CONCLUSION**

For the reasons set forth herein, it is ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 66) is **DENIED**, with the exception that the Court is granting partial summary judgment in Defendant's favor on the underlying verdict as an element of damages.

    2.    Plaintiff's Dispositive Motion for Partial Summary Judgment as to Defendant's Third, Fourth, and Sixth Affirmative Defenses (Dkt. 67) is **GRANTED**.

**DONE** and **ORDERED** in Tampa, Florida on September 13, 2012.

*[signature]*

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2010\10-cv-977.sjm & partial sjm.frm